UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:23-cr-00142-GFVT-MAS-2 |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DIQUAN TRAVON KING, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on the United States's Objections to Magistrate Judge Stinnett's Report and Recommendation. [R. 129; R. 126.] For the reasons that follow, the United States's Objections [R. 129] are **OVERRULED** and the Court will **ADOPT** Magistrate Judge Stinnett's Recommendation [R. 126] as and for the Opinion of the Court. Consequently, Defendant King will be released, with conditions, for the duration of this matter.

**I**

Defendant Diquan King has been charged with three counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(b)(1) (Counts 1, 4, and 5), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A) (Count 6). [R. 1.] More than a year later, on May 2, 2025, King was arrested in the Eastern District of Michigan. [R. 121.] King then appeared before Magistrate Judge Elizabeth Stafford for an initial appearance. [R. 112-1.] There, the United States moved for detention, and King requested that the detention hearing be held in the district of arrest. The court scheduled the hearing for May 6, 2025. Following the hearing, Magistrate Judge Kimberly

Altman denied the government's motion and entered an order setting conditions of release. [R. 112-6.]

Subsequently the United States moved this Court to stay the release and revoke the release order. [R. 109.] The Court granted the stay and directed that King be transferred to the Eastern District of Kentucky for further proceedings. [R. 110.] An arraignment was then held for King alongside a hearing on the motion to revoke. [R. 113.] There the parties consented to review with a magistrate judge and this Court referred the matter to Judge Stinnett for preparation of a Report and Recommendation. [R. 113; R. 114.]

Judge Stinnett has now prepared that Recommendation. [R. 126.] He recommends that the Court deny the Government's Motion to Revoke and that Defendant King be released under modified conditions. *Id.* at 16. The United States objects to that Recommendation and requested *de novo* review with this Court pursuant to 18 U.S.C. § 3145(a)(1). [R. 129.] A motion hearing was held on the issue on June 9, 2025, where the Court heard argument and testimony from King's aunt.

**II**

18 U.S.C. § 3145(a)(1) governs the revocation of a release order. It states that, if a "magistrate judge, or . . . a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court" releases a defendant, the "court having original jurisdiction over the offense" can consider the Government's motion to revoke that release order. 18 U.S.C. § 3145(a)(1). This Court has original jurisdiction over King's offense because it was indicted here. [R. 1.] *See United States v. Alberto-Jimenez*, 2019 WL 1509601 (E.D. Ky. Apr. 5, 2019).

The Court reviews the Magistrate Judge's release order *de novo*. *See United States v. Tolbert*, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017). A defendant should be detained if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making this determination, the Court considers (1) the nature and circumstances of the charged offense, (2) the weight of the evidence, (3) the person's history and characteristics, and (4) the danger posed by their release. 18 U.S.C. § 3142(g).

With these charges, a detention presumption arises as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). A defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant rebuts the presumption of detention, the burden shifts back to the United States to show that detention is appropriate. Detention based on danger must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Detention predicated on the risk of nonappearance must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006)

In his Recommendation, Judge Stinnett determined that "King overcame the presumption as to his risk of nonappearance by way of proffering that he has relatives… that would readily take him in and ensure his compliance with any orders set by the Court." [R. 126 at 5.] In doing so Judge Stinnett rejected the Government's arguments surrounding an outstanding bench warrant for nonappearance by King, the high potential penalties in this case, and the delay in

finding and arresting King. *Id.* at 5-8. Judge Stinnett also found that the Government did not show King is a danger to his community. *Id.* at 8-15. He noted that while King's charges are serious, and involved dangerous activities, they are temporally distant and the Government offered no evidence that King has continued those activities – a mitigating factor especially in light of King's lack of criminal history. *Id.*

The United States has objected to Judge Stinnett's R&R and once again has sought *de novo* review pursuant to 18 U.S.C. § 3145(a)(1). [R. 129.] They contend Judge Stinnett did not give sufficient weight to the danger posed to the community by King, object to Judge Stinnett's factual finding and conclusion that King has employment and a legitimate source of income, object to Judge Stinnett's "mistaken conclusion" that King was in Kentucky or otherwise easily locatable by law enforcement, and believe Judge Stinnett placed too much weight on a proffer that King's aunt could provide support and ensure defendant's appearance.

## A

The Court first considers the risk of nonappearance by King. As Judge Stinnett determined, GPS monitoring and home detention can mitigate that risk. Defense counsel proffered (and the conditions proposed by Judge Stinnett require) that King will address the outstanding warrant if released and the warrant itself is merely for a failure to appear for a misdemeanor traffic offense – a far cry from failing to appear for a far more serious felony charge. *See United States v. Munoz-Hernandez*, 2012 WL 5476892, at *11 (D.N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment."). And while the length of incarceration King potentially faces is significant, that alone is insufficient to justify detention.

The Government also emphasized before Judge Stinnett, and in its objections, that King "evaded" law enforcement because it took over a year and a half – from December 2023 to May 2025 – to effectuate his arrest following the issuance of an arrest warrant. Judge Stinnett was not convinced by that argument and neither is this Court. While it certainly took a great deal of time to bring King into custody, there is little evidence to suggest any of that difficulty was due to active evasiveness on King's part. Changing residences alone cannot do the heavily lifting. In its objection the Government states that Judge Stinnett "mistakenly concluded that King was in Kentucky or otherwise easily locatable by law enforcement." [R. 129 at 8-10.] This objection largely amounts to a mere quibble with Judge Stinnett noting the arrest warrant was not returned unexecuted. The Government emphasizes that "arrest warrants are not returned as "unexecuted" simply because an arrestee was not located at a specified location" and "law enforcement …would maintain the warrant (which does not expire) and continue to seek the arrest of the defendant at other locations" unless the warrant was withdrawn. *Id.* at 9. It is difficult to see how such clarification makes any meaningful difference in the ultimate conclusion that there is simply no evidence to show that the Government's failure to arrest King is based on his evasiveness.

The Government also objected to Judge Stinnett's Recommendation on the basis that he "placed too much weight on a proffer that King's aunt could provide support and ensure defendant's appearance." King's aunt was present at the June 9, 2025, hearing before this Court and took the stand under oath to testify that he could live with her in her home, that she would ensure his compliance with any conditions of release, and that she would assist him in making any court appearances. The Court found King's aunt to be a credible witness and the fact that

she testified at all cuts against the Government's prior objection that "[n]o witnesses testified on King's behalf." [R. 129 at 10.]

In sum, King overcame the presumption in favor of detention and the Government did not show by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure" King's appearance. King is committed to resolving the outstanding warrant, there is no evidence suggesting prior flight in this case on his part, and he has family support to ensure his compliance with any Court imposed conditions. Furthermore, the recommended conditions suggested by Judge Stinnett are themselves onerous, including GPS monitoring and home detention – a combination especially likely to mitigate any risk of nonappearance.

**B**

The Court next considers the risk of danger to the community presented by King. King has met his low burden here due to his limited criminal history, including the lack of any criminal history between the time of his indictment and his arrest in this case. Looking first at the nature and circumstances of the offense, there is no doubt that the charges against King are serious. He is indicted on multiple counts of possession with intent to distribute controlled substances and one count of possession of a firearm in furtherance of a drug trafficking crime. [R. 1.] The substances he is alleged to have distributed – fentanyl and fluorofentanyl – only heighten this concern, associated as they are with high rates of addiction and overdose. The Government has also presented substantial evidence connecting King to a considerable trafficking operation, connected him directly to at least one firearm, and has presented evidence to show his connection to stash house where even more drugs and firearms were found.

6

Nevertheless, the weight of this dangerousness is unclear.  Certainly, the charged conduct is both dangerous and substantial.  However, King has a virtually nonexistent criminal history and the Government has not presented sufficient evidence to suggest he has continued to engage in any dangerous trafficking behavior.  As Judge Stinnett determined, "[t]o the extent King's prior conduct suggested a dangerousness (and it did), his conduct for the past two and a half years would certainly suggest the contrary."  In its objections the Government attacks this conclusion in two primary fashions.  First, it presents an Instagram picture from an account associated with King of an unidentified individual in a mirror holding a large quantity of currency.  Second, the Government highlights the parallels between King and his co-defendant Donquel Hall, who was detained in this case.  [R. 129 at 4-6; R. 22.]

These attacks are insufficient, especially under a clear and convincing evidence standard. The Instagram photo is concerning, and not a good look for King given the conduct he has been charged with, but it does not provide sufficient information to suggest he is continuing to engage in drug trafficking or otherwise presents a danger to the community.  It is unclear when the picture was taken, whether the cash pictured is even real (or of a significant quantity), or even who the individual picture is.  The parallels between Hall and King are even less convincing.  As the Government acknowledges, "the bond decision is individualized, that is, codefendant Hall's detention [does] not mandate King's."  [R. 129 at 4.]  Hall was detained for conduct very similar to King's and at the June 9 hearing the Government argued that perhaps King's behavior was even more concerning.  Maybe so.  But the key difference between the two is that Hall was arrested on February 12, 2024 – less than two months after the indictment was filed in this case – giving him little time to show any change to the danger he presented.  Here, as far as the record shows, King has lived an otherwise upstanding life unconnected to the charges he faces since the

7

indictment.  The alleged criminal activity in this case occurred in 2022, almost two and half years ago. This temporal distance prevents the Government from relying on the alleged crimes alone to satisfy its burden of persuasion.

Additionally, there has been some evidence that King operates a custom rug business online with his girlfriend.  The Government objects to Judge Stinnett's finding on this issue, but the Court is not convinced King's rug business moves the needle much one way or the other. The Government emphasizes that in the bond report King characterized the business as aspirational and stated he was unemployed (with zero income).  Defense counsel has proffered that he has seen materials purchases and invoices demonstrating the legitimacy of the business, but explained that it is primarily an intermittent source of supplementary income for King.  As it stands, there is at least some evidence that King has used his time since 2022 in a productive and legal fashion.

The Court is also convinced that a sufficient family and community support structure exists to mitigate any risk of danger presented by King.  As explained above, the Court heard testimony from King's aunt at the June 9 hearing that she would be willing to take him in and ensure his good behavior. The testimony revealed that several individuals live in her home, but the home is stable and none of the occupants have criminal backgrounds.  With the addition of GPS monitoring and home detention as conditions of release, the risk that King is able to engage in drug trafficking is slight.  He would be unable to leave to engage in such behavior and it is highly probable that if he were to engage in such behavior at the aunt's home that one of the other occupants would see something and say something.

King's alleged conduct was serious, but that alone does not convince the Court that detention is warranted in this case.  He has a limited criminal history, any potential danger is

ameliorated by a strong family support structure in combination with the detention conditions proposed, and the temporal distance between his alleged crimes and today has given him the opportunity to show that any danger he presented is in the past. The Government has not presented clear and convincing evidence that King should be detained due to the risk of danger to the community.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' Objections to Magistrate Judge Stinnett's Report and Recommendation **[R. 129]** are **OVERRULED**;

2. The Court will **ADOPT** Magistrate Judge Stinnett's Recommendation **[R. 126]** as and for the Opinion of the Court;

3. The United States' Motion to Revoke the Release Order **[R. 109]** is **DENIED**; and

4. Defendant King is ordered **RELEASED** pending trial, subject to any order specifying the conditions of his release or other intervening orders of the Court.

This the 10th day of June, 2025.

Gregory F. Van Tatenhove
United States District Judge

10